# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **DOCKET NO. 03-30034-05** |
| **VERSUS** | * | **JUDGE JAMES** |
| **LESLIE "BEAU" KIMES** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. #'s 355, 363] filed by defendant, Beau Kimes. The Government opposes the motion [Doc. #'s 357, 366]. An evidentiary hearing was held on August 21, 2008. For reasons stated below, it is recommended that the motion be **GRANTED.**

## BACKGROUND

On September 10, 2003, a federal grand jury returned an eight-count indictment against Beau Kimes and four other defendants. All five defendants were charged with conspiracy to possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Indictment, Count One). Kimes was further indicted on two counts of intent to distribute various amounts of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Indictment, Counts Five and Seven).

On September 30, 2003, Kimes pled not guilty to the charges in the indictment. On April 20, 2004, trial commenced against Kimes and a co-defendant, Eduardo Torres. On the second day of trial, a mistrial was declared after it was determined that the government had not provided

certain evidence to the defendants prior to trial. Following a second trial that lasted from June 14-15, 2004, the jury returned a guilty verdict on all counts. On March 8, 2005, Kimes was sentenced to 97 months imprisonment [Doc. #'s 312, 320]). On January 5, 2007, the United States Court of Appeals for the Fifth Circuit affirmed the conviction.

Kimes filed the instant petition on May 11, 2007, asserting numerous instances of ineffective assistance of counsel, including a claim that his attorney was ineffective in failing to advise him of the sentencing ramifications of pleading guilty as opposed to going to trial. Because the undersigned finds that Kimes is entitled to relief based on this claim, the remaining claims of ineffective assistance of counsel need not be addressed.

## LAW AND ANALYSIS

Issues that a defendant can present in a motion filed under 28 U.S.C. § 2255 are limited. Only cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995); *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). In the case *sub judice*, Kimes seeks relief on the basis that he was denied effective assistance of counsel.

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F. 2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 732, 735 (5th Cir. 1992). Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-7, 104 S.Ct. 2052, 2063-2064

2

(1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the defendant does not make a sufficient showing as to one section of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The parts of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first part of the *Strickland* test, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See*, *Strickland* at 689-690, 2065-2066. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland* at 690, 2066; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1993); *see also, Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail

3

time. *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

Kimes argues that his attorney did not advise him of his option to obtain a reduced sentence by pleading guilty. This claim was the sole focus of the evidentiary hearing held in this matter. At such hearing, the Court heard the testimony of Kimes and Donald Hathaway, the Assistant United States Attorney who prosecuted Kimes's case. Kimes's attorney, Paul Kidd, did not appear at the hearing.

Kimes testified that prior to trial, Kidd did not discuss with him (1) how the United States Sentencing Guidelines might affect his sentence; (2) how the safety valve provision might affect his sentence; or (3) that he could potentially have received a three-point reduction in his base offense level under the Sentencing Guidelines for acceptance of responsibility had he pled guilty. [Doc. # 381, p. 6]. He stated that Kidd represented to him that the Government's case against him was weak. *Id.* at 9. According to Kimes, Kidd never recommended to him that he should plead guilty or informed him that there were benefits to pleading guilty; also, to his knowledge, the Government never made a plea offer. *Id.* at 10. Kimes testified that Kidd never discussed the elements of the offense of conspiracy to distribute methamphetamine with him and that he did not really understand what a conspiracy was prior to going to trial. *Id.* at 11.

Kimes stated that at some point prior to his trial, he learned that two of his co-conspirators had entered guilty pleas and had received 5K1 sentence departures. *Id.* According to Kimes, upon learning this information he asked Kidd about whether he could get a 5K1 departure, in response to which Kidd stated that he would talk to Hathaway [Doc. # 381, p. 12]. He testified that Kidd later told him did not have anything to offer the Government so he was not entitled to anything. *Id.* at 13. Kimes stated that he never knew that he could have pled guilty as charged to the indictment and that if he had known about the safety valve provisions, the law

4

regarding conspiracy, and the acceptance of responsibility provisions, he would have pled guilty. *Id.* at 13-14. He testified that Kidd never discussed with him the pros and cons of pleading guilty versus going to trial. *Id.* at 17.

Kimes stated that he was aware that he was sentenced to 97 months despite the fact that he was subject to a mandatory minimum of 120 months. *Id.* at 20-21. When asked whether he was aware that the reason he received 97 months was the fact that the judge applied the safety valve provision, Kimes responded that he was not aware of that fact. *Id.* at 21. When questioned regarding a letter he had another inmate write for him to Kidd on February 29, 2004, in which he stated what he would like his trial strategy to be and discussed why he was not guilty of the crimes with which he was charged, Kimes testified that his purpose in writing the letter was to convey that he "wanted to go on with the game plan that he [Kidd] said we was going to go with" and admitted that he never stated in such letter that he wanted to plead guilty. *Id.* at 24.

According to Kimes, at the time he wrote the letter, Kidd has not discussed with him the safety valve provisions, the acceptance of responsibility offense level reduction, or what the Government would have to prove in order for him to be found guilty of the conspiracy charges. *Id.* at 25. He also stated that he did not have a complete understanding of the law regarding the conspiracy charges, nor did he know how his case would be affected by a guilty plea. According to Kimes, he believed that he would be sentenced to ten years regardless of whether he went to trial and lost or pled guilty [Doc. # 381, p. 26]. Kimes testified that he did not plead guilty because he was not aware that he could benefit from it and that if he knew today that his sentence could be as low as 70 months, factoring in the acceptance of responsibility offense level reduction, he would plead guilty. *Id.* at 27.

Hathaway testified that he did not remember exactly what plea offers were extended to

5

Kimes and the other defendants, but that he believed he told the attorneys that if they pled before Auger, a co-conspirator, he could "give them credit for assisting in basically encouraging Mr. Auger to plead and possibly get them a 5K1 or some other type of motion for downward departure or something like that."[1] *Id.* at 29. He then testified that the only thing he could remember about Kimes was that he did not want to go to jail and "any conversations or any communications I had were just being in the courtroom with him, that's what was related to me was that the offers that we had weren't any good because he didn't want to go to jail." *Id.* Hathaway did not recall Kidd ever asking him for a plea offer. *Id.* at 30.

According to Hathaway, he discussed the possibility of Kimes' pleading guilty with Kidd approximately three times, but he did not recall the specifics of the conversations. *Id.* at 30. He stated that these discussions were along the lines of generic discussions between prosecutors and defense counsel that typically occur early on in a case. *Id.* at 31. Hathaway testified that he never had any discussions with Kimes personally and that any sense of why he did not plead guilty did not come directly from Kimes; Hathaway was not privy to any conversations that transpired between Kimes and Kidd. *Id.*

Kimes argues that Kidd rendered ineffective assistance of counsel in (1) failing to explain the law of conspiracy; (2) failing to explain the benefits of a guilty plea, specifically that the safety valve provisions would allow him to be sentenced below the statutory minimum and the acceptance of responsibility offense level reduction could have meant a three-point reduction in his guidelines range; (3) failing to explain that he could plead guilty to the indictment without a 5K1; and (4) failing to discuss the operation of the Sentencing Guidelines and how they are

---

[1] Kimes was represented by new counsel at sentencing, and his sentencing attorney stated that, to his knowledge, his client was not offered the opportunity to plead guilty with the benefit of an associated sentence reduction. (March 8, 2005, Sentencing Transcript, pg. 37)

6

driven by drug amounts. Having reviewed the evidence in the record, the undersigned finds that Kimes has demonstrated that Kidd rendered ineffective assistance of counsel and, therefore, that he is entitled to relief under §2255.

As the Fifth Circuit has stated, "[o]ne of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005) (citing *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965)). "An attorney fulfills this obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea." *Id.* (citing *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995)); *see also Childress v. Johnson*, 103 F.3d 1221, 1227 (5th Cir. 1997) (citation omitted) ("It is clear that a defendant is entitled to the effective assistance of counsel in determining how to plead, . . . and can attack his conviction collaterally if he is not given this right."). In this case, the overwhelming weight of the evidence indicates that Kidd failed to sufficiently advise Kimes about the possibility of a guilty plea and the benefits to his sentence that could have resulted therefrom.

Although the Government contends that a plea offer was never made to Kimes, Hathaway testified that he believed he told the defendants' attorneys that if they pled guilty before Auger, he could give them credit for assisting in persuading Auger to plead and possibly recommend a 5K1 or some other type of downward departure. Kimes stated that when he learned that his co-defendants had entered guilty pleas and obtained 5K1's, he asked Kidd why he could not get a 5K1, and Kidd responded that he would discuss the issue with Hathaway. According to Kimes, Kidd later informed him that he was not entitled to a 5K1 because he did not have anything to offer the Government, although there was no indication from Hathaway's testimony that he ever informed Kidd that Kimes was not eligible for a 5K1.

7

Regardless, however, of whether a plea offer was ever officially made to Kimes or whether the issue of his eligibility for a 5K1 was ever discussed, Kidd's failure to inform Kimes of the potential benefits of pleading guilty, even without a plea agreement, was objectively unreasonable. Kimes testified that Kidd never represented to him that he could plead guilty or that he could have benefitted from a guilty plea. He stated that Kidd never discussed with him how the Sentencing Guidelines might have affected his sentence, that the safety valve provisions of the guidelines could allow him to be sentenced below the statutory minimum, or, most importantly, that he could potentially receive a three-point reduction in his offense level based on acceptance of responsibility if he pled guilty. According to Kimes, he was under the impression that he was going to be sentenced to 120 months, the statutory minimum, regardless of whether he pled guilty or went to trial and was convicted; therefore, he did not plead guilty because he did not know that he could benefit from doing so.

Moreover, Kimes's testimony in this regard is uncontradicted by other evidence. The Government argues that correspondence between Kidd and Kimes indicates that Kidd was extremely solicitous of Kimes's wishes and continuously informed Kimes of all proceedings that occurred in his case. According to the Government, the tone of such correspondence indicates that Kidd would not have proceeded to trial without consulting Kimes. However, there is no reference to the possibility of a guilty plea, or the potential sentencing benefits therefrom, in any of the letters referenced by the Government. Given this fact, and Kimes's testimony, the undersigned is not inclined to infer from such correspondence that Kimes's made a knowing and informed decision to proceed to trial rather than plead guilty. In addition, even if the letters could be interpreted as indicating that Kimes did not object to going to trial, the issue is not whether Kimes decided to go to trial, but whether his decision to go to trial was made with full

knowledge of his options, including pleading guilty, and their implication for his sentence. Nothing in the letters relied upon by the Government even remotely indicates that Kidd informed Kimes of the option to plead guilty or the potential benefits therefrom. Accordingly, the undersigned finds that Kidd did not sufficiently inform Kimes of the sentencing implications of the decision to plead guilty as opposed to go to trial, and that his performance in this regard fell below an objective standard of reasonableness. *See United States v. Turner*, 2007 WL 1521115, *1-2 (N.D.Tex. May 23, 2007) (finding deficient performance where attorney (1) never discussed with defendant the application of Sentencing Guidelines if he went to trial as opposed to pled guilty; (2) never apprised him of the option to plead guilty without a plea agreement; and (3) did not discuss acceptance of responsibility until days before the trial). Such finding, however, does not end the inquiry in this case, as Kimes still must demonstrate that he prejudiced by Kidd's deficient performance.

In order to demonstrate that he was prejudiced by Kidd's ineffective assistance, Kimes bears the burden of showing that had he known of the potential benefits of pleading guilty, he would have pled guilty and also would have received a lesser sentence. The undersigned finds that Kimes has carried his burden in both respects. With regard to whether Kimes would have pled guilty, which is a question of fact, Kimes testified that if he had known of the sentencing benefits he could have received from the safety valve and acceptance of responsibility provisions of the Sentencing Guidelines, he would have pled guilty. The undersigned found this testimony to be credible and substantially uncontradicted. The Government contends that Kimes's decision to go to trial was based on the fact that he did not want to go to jail rather than any failure on the part of Kidd to inform Kimes of the sentencing options with respect to guilty plea. As support for this argument, the Government relies on the aforementioned correspondence between Kidd

and Kimes; however, the letters do not provide the support the Government seeks.

For example, the Government relies on a December 24, 2003 letter from Kidd to Kimes in which Kidd addresses one of Kimes's relative's requests that he be released before Christmas and discusses a previously-filed motion to release without bail and motion to dismiss based on speedy trial grounds [Def. Ex. 11].[2] Nothing in this letter provides any significant support for the Government's contention that Kimes would have proceeded to trial even if he had known of his options regarding a guilty plea; the fact that an individual or his family desires a release on bail or even to have the charges dismissed pre-trial in no way indicates he would forgo the option to plead guilty no matter the potential benefits.

The Government also relies on a letter written by Kimes in which he informs Kidd that he is not guilty of any conspiracy and denies knowing one of his co-conspirators.[3] Although repeated pre-trial claims of actual innocence have been held to refute an individual's claim that he would have pled guilty had he known of the potential benefits, the undersigned finds that one letter in which Kimes denied responsibility for the crimes with which he was charged is not sufficient, under the circumstances of this case, to refute Kimes's sworn testimony that he would not have gone to trial had he known of the potential benefits of pleading guilty, especially given his uncontradicted testimony that Kidd never informed him that he could plead guilty without a

---

[2] The Government notes that in the letter Kidd states, "No one, except you, understands better than I your desire to be out of jail." *Id.*

[3] The letter was written in response to a letter from Kidd notifying Kimes that he had recently reviewed the F.B.I. 302 reports and asking him to respond to the statements of co-defendants Jason Murray and John Auger and the amount of methamphetamine the FBI was claiming was seized from him [Def. Ex. 8]. In the letter, Kimes asserted that he did not know Murray and that the only conspiracy that existed was between Murray and Auger. *Id.*

plea agreement and receive an offense level reduction for acceptance of responsibility.[4] An individual whose lawyer, through action or inaction alike, has left him with the impression that there is no benefit to a guilty plea would certainly be more inclined to rely on claims of actual innocense once resigned to the fact that trial was imminent.

Finally, the Government relies on Hathaway's testimony that it was related to him that Kimes did not want to plead guilty because he did not want to go to jail. However, given Hathaway's testimony that he never spoke directly with Kimes but rather only to Kidd, nor was he privy to any conversations between Kidd and Kimes, and the fact that there is no corroborating testimony from Kidd or Kimes, such borderline double-hearsay testimony is worthy of little reliance. Therefore, the undersigned finds that had Kidd properly advised Kimes regarding his option to plead guilty without a plea agreement and the potential benefits of such a plea, Kimes would have pled guilty.

The undersigned must next determine whether Kimes has demonstrated that there is a reasonable probability that he would have received a lesser sentence had he pled guilty. Based on Kimes's conviction on all counts charged in the indictment and the sentencing judge's findings regarding relevant conduct, Kimes base offense level was 32, which equates to a guidelines sentencing range of 121-151 months considering his criminal history category of one, USSG, Nov. 5, 2003, Sentencing Table; moreover, as noted previously, Kimes was subject to a mandatory minimum sentence of 120 months pursuant to 21 U.S.C. § 841(b)(1)(A)(viii). At sentencing, Kimes received a two-level downward departure pursuant to the safety valve

---

[4] For example, in *United States v. Faubion*, 19 F.3d 226, 229-30 (5th Cir. 1994), the Fifth Circuit faced a claim similar to the one at bar and found that the petitioner could not demonstrate prejudice because the sentencing judge had enhanced her sentence based on obstruction of justice, which indicates behavior inconsistent with acceptance of responsibility. No such circumstance is present in this case.

provision of 18 U.S.C. § 3553(f); therefore, Kimes was sentenced to 97 years, below the statutory minimum and the lowest possible sentence within the guidelines range.

As Kimes ultimately received the benefit of the safety valve provision, he cannot demonstrate prejudice regarding such provision based on the fact that he did not plead guilty. However, he can demonstrate prejudiced based on the fact that he did not receive a reduction in his base offense level based on acceptance of responsibility. The Sentencing Guidelines state that a defendant's offense level should be reduced by two points if he "clearly demonstrates acceptance of responsibility for his offense." Although it is well settled that "the mere fact that a defendant pleads guilty does not require that a court grant a reduction for acceptance of responsibility," USSG § 3E1.1, comment n.3, this Court routinely grants a two-level reduction for acceptance of responsibility when a defendant pleads guilty; moreover, it is evident from the transcript of the sentencing hearing that, had Kimes pled guilty, he would likely have received at least a two-level reduction. At sentencing, the district judge noted that Kimes was one of the lower-level individuals in the conspiracy and explicitly stated that his guideline range would have been lower had he pled guilty [March 8, 2005, Sentencing Transcript, pg. 38].[5]

---

[5] At sentencing, the judge stated as follows:

> Mr. Kimes, it's like I told the other defendants, sometimes people get themselves in situations. And I think Mr. Murray has correctly pointed out that you were one of the lower-level people in the conspiracy. But you were, you know, a co-conspirator in the matter. And to some extent, you will receive, or you will receive the benefit of the safety valve, but there are limitations, you know, in what the Court can do to make all of this perfect. And I guess what makes it all perfect is very subjective. I may have one view of that. You may have another. You know, how do we align or make it fair for the defendants and also for the public and the government? That's a very subjective thing. And I – within the parameters I had to work with – for example, if you had plead [sic] guilty as charged, you know, your

Kimes argues that had he pled guilty, he would have received a three-level reduction in his base offense level based on USSG § 3E1.1(b), which allows the Government to move for an additional one-point reduction based on acceptance of responsibility if the base offense level is 16 or greater and the individual pled guilty in a timely manner, thereby sparing the Government from having to devote resources to preparing for a trial. If Kimes had received the three-level reduction, his offense level would have been 27, which carries with it a guidelines range of 70-87 months. USSG, Nov. 5, 2003, Sentencing Table. Although Hathaway did not definitely state that he would have moved for the additional one-point deduction had Kimes pled guilty in a timely manner,[6] there is no reason to suspect that he would not have done so given his testimony that he was willing to request a downward departure if Kimes and his co-defendants pled before Auger. A sentence within the guideline range of 70-87 months would clearly have been lower than the 97-month sentence Kimes ultimately received.

However, even assuming that Kimes would only have received a two-level acceptance of responsibility reduction, there is still a reasonably probability that his sentence would have been lower. A two-level reduction would have equated to a 78-97 month guidelines range. *Id.* Given that Kimes's sentence of 97 months was at the lowest end of the guideline range for a base offense level of 30, and considering the judge's comments at the sentencing, it is reasonably likely that the court would not have imposed a sentence at the highest end of the range had Kimes

> guidelines range would have been even lower. But you exercised your right to go to trial, and you had that right, and I respect that. But there are consequences now that are – you'll have to live with.

(Sentencing Transcript, pg. 38).

[6] *See United States v. Newsom*, 515 F.3d 374, 377 (5th Cir. 2008) (sentencing court has no discretion to grant additional one-point reduction under section 3E1.1(b) without Government motion).

13

pled guilty, and any sentence within the 78-97-month range other than 97 months would be lower than the sentence Kimes received. *See Herrera*, 412 F.3d at 581 ("any amount of additional jail time has significance under *Strickland*"). Hence, the undersigned finds that Kimes has demonstrated that there is a reasonable probability that he would have received a lesser sentence had he pled guilty and thus that he was prejudiced by Kidd's ineffective assistance. Accordingly, it is recommended that Kimes's sentence be vacated and that he be re-sentenced as if he had pled guilty to Counts One, Five, and Seven of the indictment.[7] *See Turner*, 2007 WL 1521115, *5-6.

## CONCLUSION

For the above-stated reasons,

IT IS RECOMMENDED that defendant's Motion to Vacate, Set Aside, or Reduce Sentence [doc. # 355, 363] be **GRANTED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE**

---

[7] The undersigned notes that Rebecca L. Hudsmith was appointed to represent Kimes during the pendency of the instant § 2255 motion. Accordingly, the undersigned recommends that if Hudsmith agrees to do so, she continue to represent Kimes through his re-sentencing and other proceedings that may arise, including any subsequent appeals filed by the Government.

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 28th day of January, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE